UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CAMERON WERDEN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-846 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

Cameron Werden has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Werden sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Werden has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Werden requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 14], GRANTS Mr. Werden's

motion for summary judgment, [Doc. 29], and DENIES AS MOOT Mr. Werden's request for oral argument. [Doc. 43].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, a court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't merely allege a disputed material fact to defeat summary judgment; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1] Mr. Werden's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 8], and he requests consolidated oral argument. [Doc. 43]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Cameron Werden alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility for two and a half months starting in January 2021. He alleges his cell had no light and the window was covered with sheet metal. Live wires dangled from the ceiling and shocked him. Mr. Werden claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and he seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Werden sued from prison, so the defendants aren't liable if they can show that Mr. Werden didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal

3

grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's system and filed with other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if there's no response within twenty business days of when the grievance specialist

4

received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Werden used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Werden didn't exhaust the grievance process. Their evidence includes the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure

5

00-02-301, [Doc. 14-2], Mr. Werden's grievance history, [Doc. 14-3], a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility, [Doc. 14-1], and documents relating to grievance number 125039. [Doc. 14-4]. They include in response to Mr. Werden's motion for summary judgment another plaintiff' complaint and grievance records. [Doc. 35-1 and 35-2].

Mr. Gapski reviewed documents relating to Mr. Werden's grievance history and attests to the grievance policy just described. He then describes Mr. Werden's grievance history, explaining that while Mr. Werden successfully filed grievance number 125039, the prison has no record of an appeal. Prison records don't show any other grievances or appeals relating to Mr. Werden's cell conditions.

The documentary evidence shows that the grievance specialists received a grievance from Mr. Werden on March 24, 2021. Mr. Werden wrote, "I have no light, or window in my cell. I cannot see anything. I cannot even see the toilet to use the restroom. Wires hang from my ceiling." [Doc. 14-4 at 2]. The defendants include a response report signed March 24 for the grievance. The grievance specialist wrote, "Since your grievance that you filed on 3/8/21, you have been moved twice. Your grievance should be handled." [Doc. 14-4 at 1]. This copy isn't marked "agree" or "disagree" and doesn't have Mr. Werden's signature.

*Mr. Werden's Account*

Mr. Werden asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration (including a copy of

6

the grievance report for grievance 125039 and request for interview slips), [Doc. 27-7 at 138–146], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist who also served as Rule 30(b)(6) representative for the prison, [Doc. 27-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 27-2 to 27-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 27-6].

According to Mr. Werden's declaration, he filed a grievance about his cell conditions on March 8, 2021. The grievance was assigned number 125039, and he received a response. The response matches the defendants' except it also includes "disagree," his signature, and the date "3/24/23." [Doc. 27 at 143]. Mr. Werden says he marked the response with "disagree" and submitted it but never received an appeal form, so couldn't appeal. He asked correctional officers, but they wouldn't give him a form. He asked Mr. Angle, a case manager. He said he'd get Mr. Werden a form but never did. He filed a couple of request for interview forms to counselors asking for an appeal form but got no response.

Mr. Werden had a similar experience in January 2022 for an unrelated grievance. He didn't receive an appeal form, so asked Officer Layman for an appeal form. She couldn't find any and wrote a statement for Mr. Werden, explaining that she couldn't find one for him. [Doc. 27 at 142]. Likewise, Mr. Werden asked Ms. Hall for appeal forms for other grievances in 2022 but Ms. Hall said only the grievance specialists could provide those. [Doc. 27 at 145]. A counselor gave the same response to another request. [Doc. 27 at 146].

7

Mr. Werden presents Mr. Gapski's testimony as evidence that Miami Correctional Facility didn't follow department policy and made the grievance process impossible. Mr. Gapski, testifying as Miami Correctional Facility's Rule 30(b)(6) representative, described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing, like Mr. Werden's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Gapski also described how Miami Correctional Facility handles appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 14-2 at 12]. The policy adds that a prisoner who wishes to file a first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, describing an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances

8

with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the original grievance number on it. [Doc. 27-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Gapski also spoke of how timing is calculated. The grievance policy requires that a prisoner "submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident given rise to the complaint." [Doc. 14-2 at 9]. The same is true for appeals, except that a prisoner has five business days instead of ten. [Doc. 14-2 at 14]. Mr. Gapski attested that grievance specialists calculate timing based on when they receive an appeal. So an appeal is deemed untimely if not *received* within five business days. Timing doesn't depend on when a prisoner signed an appeal or handed an appeal to a correctional officer, even though prisoners often can't give an appeal directly to a grievance specialist.

Mr. Werden presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of

9

Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

## Discussion

Mr. Werden and the defendants move for summary judgment on the exhaustion defense. The governing law is thoroughly set out in the court's opinion and order on cross-motions for summary in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, which discussion the court adopts by reference.

Warden Hyatte and Deputy Warden Payne's legal argument is straightforward: the prison's policies plainly require a formal grievance and two levels of appeal. Mr. Werden didn't appeal grievance 125039, so he didn't exhaust administrative remedies.

Mr. Werden's argument is similarly straightforward: he wanted to appeal grievance 125039 but was thwarted because he needed the appeal form but policy and practice made that unavailable.

Approaching from Mr. Werden's perspective makes for a clearer picture.

10

Mr. Werden claims he marked the grievance response with "disagree" and returned it, but he was never given an appeal form even when he asked several prison officials, so he exhausted all available remedies. Appealing his grievance was therefore a dead end. *See* Ross v. Blake, 578 U.S. 632, 643 (2016) ("[A]n administrative procedure is unavailable where (despite what regulations or guidance materials may promise) it operates as a simple dead end.").

Mr. Werden's claim fits with the policy and evidence, particularly Mr. Gapski's testimony. According to policy, a prisoner must appeal the grievance specialist's response or non-response. A prisoner filing an appeal must use State Form 45473. But Mr. Gapski describes an unauthorized step requiring a prisoner to first mark another form with "disagree" before receiving State Form 45473. If there's a breakdown at this step, a prisoner can't mark "disagree" on a form he never receives. Mr. Werden claims he hit a dead end because he marked "disagree" and submitted the form but was never returned an appeal form.

If Mr. Werden is believed, he has exhausted *available* remedies. Mr. Werden could have tried to appeal the prison's response, but that appeal was made impossible because he didn't receive an appeal form and Miami Correctional Facility required State Form 45473 to appeal. It provided State Form 45473 form only after a prisoner completed the unauthorized intermediate step involving the Offender Grievance Response Report.[2] Mr. Werden is entitled to

---

[2] The defendants dispute that a prisoner gets the appeal form only after completing the unauthorized step but provide no evidence (policy language, testimony, or otherwise) to explain when or how a prisoner receives a copy. [Doc. 36 at 14–16].

summary judgment on the affirmative defense unless the defendants can somehow prove they're nevertheless entitled to judgment or can show that there's a genuine dispute of material fact requiring a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne argue that administrative remedies were available and Mr. Werden didn't exhaust them, so they're entitled to summary judgment.

The defendants argue the administrative process was available because Mr. Blanchard successfully filed other grievances and other prisoners successfully finished the entire process. Mr. Werden's grievance log shows that he filed grievances during his period of incarceration. They cite Mr. Blanchard, a plaintiff in a consolidated case, 3:21-CV-160, as evidence that the process was available because he successfully completed all three steps.

That the prison logged and responded to other grievances belonging to Mr. Werden and other prisoners doesn't contradict Mr. Werden's claims. Mr. Werden claims that *his* grievances went unanswered, not that no grievance ever received a response. He includes evidence of systemic failures to bolster his claim, but his claim rests on his declaration. Likewise, Mr. Blanchard's success wouldn't disprove that Mr. Werden never received the appeal form.

The defendants argue that administrative remedies were available because Mr. Werden received information about the process during admission and orientation and he has no evidence that he was never told how the process worked. This argument doesn't respond to Mr. Werden's evidence and argument.

12

His argument depends on whether he was given the forms necessary for an appeal. Mr. Werden's evidence shows that he didn't receive them because of an unauthorized step in the grievance process. Complete knowledge of the grievance process wouldn't make up for the pitfall Mr. Werden faced.

Next, the defendants argue Mr. Werden can't show he was misdirected or never given the appeal form because his documents relating to later grievances aren't relevant to the complaint. This argument assumes that those exhibits are Mr. Werden's only evidence. His own testimony and Mr. Gapski's testimony support his account, independent of his other documentary evidence, so he's shown exhaustion regardless of the other documents' relevance.

At bottom, Warden Hyatte and Deputy Warden Payne's argument is that they're entitled to summary judgment because they have no institutional records of Mr. Werden's appeal. Their argument doesn't controvert Mr. Werden's evidence that he didn't get an appeal form with his grievance response, that he never got one after he asked, and that appeals were a dead end if a prisoner wasn't given an appeal form. The defendants' evidence is consistent with Mr. Werden's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Werden. Administrative remedies weren't available to Mr. Werden, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a <u>Pavey</u> hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. <u>Bessler v. Wexford of Ind. LLC</u>, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2,

13

2022). Neither party requested a <u>Pavey</u> hearing and the consistency between Mr. Werden's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Werden's motion for summary judgment without a <u>Pavey</u> hearing.

Mr. Werden requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Werden's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT Mr. Werden's motion for consolidated oral argument.

SO ORDERED.

ENTERED:  August 15, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court